John D. VIDRINE, Plaintiff-Appellant,

v.

Daniel ENGER, M.D.,
Defendant-Appellee.

No. 83–4624.

United States Court of Appeals,
Fifth Circuit.

Aug. 2, 1984.

Stephen A. Anderson, Hopkins, Logan, Vaughn & Anderson, Gulfport, Miss., for plaintiff-appellant.

Thomas L. Stennis, II, Bryant & Stennis, David B. Strain, Gulfport, Miss., for defendant-appellee.

Before RUBIN, REAVLEY, and TATE, Circuit Judges.

PER CURIAM:

The magistrate, whose jurisdiction in this diversity case for medical malpractice was consented to by the parties, rendered sum-

mary judgment on the basis that the claims are barred by the Mississippi statutes of limitations. Finding the conclusion correct, we affirm.

The material facts established beyond genuine dispute are these. John D. Vidrine suffered a fracture of his left forearm on October 5, 1972, while working on an automobile tire. He was admitted to Singing River Hospital in Pascagoula that day and treated by Dr. Daniel J. Enger. Dr. Enger applied a longarm cast to immobilize Vidrine's arm.

Dr. Enger continued to see Vidrine at the hospital until his discharge on October 14, then continued to treat Vidrine at the doctor's office. On January 2, 1973, Dr. Enger removed the longarm cast that had been applied to Vidrine and replaced it with a sugar tong splint. This was removed on January 30. Vidrine called on Dr. Enger at his office eight or more times thereafter, over a three-year period, his last visit being in March, 1976 for a complaint unrelated to his arm. The only time Dr. Enger saw Vidrine for his arm condition within six years of the date suit was filed was on June 10, 1974, when he took x-rays of Vidrine's arm and discharged Vidrine, telling him to return if he had further trouble. Vidrine testified that on this occasion Dr. Enger pointed out that the x-rays showed a hairline crack and told him this was all the doctor could do and that his tenderness was just part of the normal healing process. Although Vidrine received medical treatment from Dr. Enger thereafter on several occasions, Dr. Enger's deposition and his office records establish that these were all for matters relating to other injuries.

Suit was filed on March 24, 1980, more than four years after Vidrine last visited Dr. Enger for treatment of the fracture. The suit seeks both actual and punitive damages. Vidrine contends that Dr. Enger was negligent in failing to perform the 1972 operation properly, in allowing him to return to work in 1973, in failing to diag-

nose a non-union of his left forearm in 1973, in failing to take x-rays and reexamine his arm in 1974, and in failing to have tomograms performed in 1974 to determine whether reunion of his ulna had been effected.

The Mississippi statute of limitations for negligent actions requires suit to be filed within six years "next after the cause of such action accrued." Miss.Code Ann. § 15-1-49 (1972).[1] In this case, as the magistrate correctly found, suit was barred for all causes of action that "accrued" before March 24, 1974. While none of Mississippi's limitations statutes explicitly applies to an action for punitive damages, the state has two one-year statutes that may be applicable to such claims, one a general torts statute and the other applicable to suits for a penalty or forfeiture. The magistrate applied these separately and held the claim for punitive damages barred. Neither the magistrate nor the parties apparently viewed that claim as so dependent on the basic malpractice claim as to be precluded by loss of the negligence claim.

■ We turn first to the basic negligence claim. In most cases, the Mississippi statute commences to run on the date of the wrongful act; the date injury was or should have been discovered is the date the cause of action "accrues" only in exceptional cases, such as those in which the plaintiff establishes fraudulent concealment. *Wilder v. St. Joseph Hospital,* 225 Miss. 42, 82 So.2d 651, 652 (1955). The Mississippi Supreme Court refused in *Wilder* to start the statutory period with the date of discovery of the act of malpractice (leaving sponges, gauze, and other substances in a patient during a hysterectomy) for two reasons: her allegations were insufficient to establish that the malpractice was fraudulently concealed from her, and her delay in discovering her condition was unreasonable. The court explained:

In view of the allegation of continuous pain, etc., from the date of the operation,

1. This statute was applicable until July 1, 1976. A prior statute, identical in effective terms, was applied in *Wilder v. St. Joseph Hospital,* 225 Miss. 42, 82 So.2d 651 (1955).

it is obvious that the plaintiff, in the exercise of ordinary care, should have discovered her alleged condition within six years. 82 So.2d at 653.

The *Wilder* court's analysis of an exception cannot be read as the announcement of a new general rule, especially in the light of the Mississippi Supreme Court's subsequent treatment of its own precedent. Interpreting *Wilder*, the state supreme court later said "the general rule on malpractice is that a cause of action accrues and the statute begins to run on the date of the wrongful act or omission which constitutes the malpractice and not from the time of discovery thereof, and the decisions of this Court are in accord therewith." *Smith v. McComb Infirmary Association*, 196 So.2d 91, 92–93 (Miss.1967). The Mississippi Supreme Court again explained the decision in *M.T. Reed Construction Co. v. Jackson Plating Co.*, 222 So.2d 838 (Miss.1969), in which property damages were sought for alleged negligence in building a roof. The court there said that it had in *Wilder* "rejected the 'know or ought to know' rule and adopted the majority rule that 'a cause of action for malpractice accrues and the statute begins to run at the time of the injury, or, as otherwise stated, on the date of the wrongful act or omission constituting the malpractice, and not from the time of discovery thereof ....'" 222 So.2d at 840. It added: "we note that the legislature has had ample opportunity to express its opposing concept, if any, to the Court's refusal in *Wilder v. St. Joseph Hospital, supra,* to adopt the 'know or ought to know' rule through new and contrary legislative action." *Id.* In *Ford Motor Company v. Broadway*, 374 So.2d 207 (Miss.1979), the Mississippi court returned to the issue and reiterated that in *Wilder* and *Reed* it had held that the cause of action "accrued on the date of the negligence or omission and not on the date the negligence was finally discovered." [2]

Vidrine finds a platform for argument in our statement in a case involving limitation of actions for products liability. *Alabama Great Southern Railroad Co. v. Allied Chemical Corp.*, 467 F.2d 679 (5th Cir. 1972). "This comment [in *M.T. Reed*] injects some confusion into the area since such a refusal [to apply the "know or ought to know" rule] is not apparent in the *Wilder* opinion." [3] This observation was not applied, however, for we simply held that "Mississippi is [not] wedded to an immutable time of delivery or time of wrongdoing rule," [4] and held that a products liability tort was not barred until the occurrence of the event that caused injury.

■ Vidrine contends that, when a doctor treats a patient over an extended period of time, the statute of limitations should begin only when the patient actually discovers that the doctor has been negligent. In 1976, the Mississippi legislature adopted this view and set up a special statute for malpractice suits imposing a two-year limit from the date the negligence was discovered or might, with reasonable diligence, have been known or discovered. Miss.Code Ann. § 15–1–36 (Supp.1983). Nevertheless, we are confident that, as to cases arising before then, the Mississippi court would apply the time-of-injury rule, and we are bound by that result, whatever the rule in other states and whatever its presumed advantages.

■ Vidrine points to one allegation of negligence by Dr. Enger not barred by the six-year statute of limitations because it occurred after March 25, 1974. In answer to No. 6 of the interrogatories put to Vidrine, Vidrine refers to his visits to Dr. Enger in 1974 and urges that this creates a genuine dispute of material fact as to the existence of a cause of action for an act of negligence occurring on that date. In these answers Vidrine says that Dr. Harvey Rein was of the opinion that Dr. Enger committed malpractice:

**2.** *Id.,* 374 So.2d at 208.

**3.** 467 F.2d at 683.

**4.** *Id.*

in failing to take x-rays or reexamine Plaintiff's arm in 1975 [sic] when the Plaintiff told the Defendant he was still having trouble with his left forearm and in failing to reevaluate the patient's condition in an attempt to determine the seriousness of his complaints. . . .

He also points out that, in his deposition, he testified that when he visited Dr. Enger about other matters after 1975, he complained that his forearm was hurting him and that Dr. Enger was negligent in failing to treat him for these complaints.

The magistrate was correct in refusing to consider this answer as "evidence" sufficient to defeat the rule 56 motion for summary judgment.

Rule 56(e) states in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Vidrine presented no affidavit or deposition from Dr. Rein or any other physician. His quotation of Dr. Rein is pure hearsay. We have repeatedly held that, while notice pleading is sufficient to open the federal courthouse door, a party opposing a motion for summary judgment, properly put, may not ask the court to try the case in order to determine the facts but must set forth by affidavit or deposition specific facts that would justify judgment in his favor if proved.[5]

The five affidavits filed by Dr. Enger establish that other than on the June 1974 visit, the treatment rendered by him after March 25, 1974, was only for problems unrelated to the broken arm and further that he had violated no medical standard of care in treating Vidrine after that date. Vidrine filed no countervailing affidavits. His answers to interrogatories cannot controvert Dr. Enger's standard of care because, as hearsay, they are not "made on personal knowledge," and they do not "show affirmatively that [Vidrine] is competent to testify to the matters stated therein," *i.e.*, whether Dr. Enger exercised the degree of care ordinarily exercised by local members of his profession. These are express requirements of rule 56(e). *See, e.g., Barker v. Norman,* 651 F.2d 1107, 1123 (5th Cir.1981).

The magistrate thought a separate statute of limitations applied to the claim for punitive damages and applied Miss.Code Ann. 15–1–33 (1973),[6] and Miss.Code Ann. 15–1–35.[7]

■ The parties assiduously apply themselves to plumbing this analysis, to which the magistrate was doubtless led by their briefs. We find it sufficient to hold that, absent actual damages arising from a legally cognizable cause of action, Mississippi would not allow punitive damages. Exemplary or punitive damages are additional to compensatory damages.[8] They are, as the Mississippi Supreme Court has said, "added damages."[9] There being no actual damages, there can be no addition.

---

5. *E.g., United States v. An Article of Drug Consisting of 4,680 Pails, More or Less,* 725 F.2d 976 (5th Cir.1984); *Barker v. Norman,* 651 F.2d 1107 (5th Cir.1981).

6. The statute reads:

All actions and suits for any penalty or forfeiture on any penal statute, brought by any person to whom the penalty or forfeiture is given, in whole or in part, shall be commenced within one year next after the offense was committed, and not after.

7. This statute reads:

All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, and for libels, shall be commenced within one year next after the cause of action accrued, and not after.

8. *Yazoo & M.V.R. Co. v. Hardie,* 100 Miss. 132, 55 So. 42 (1911).

9. *Fowler Butane Gas Co. v. Varner,* 244 Miss. 130, 141 So.2d 226, 233 (1962); *see also Snowden v. Osborne,* 269 So.2d 858, 860–61 (Miss. 1972).

For these reasons, the judgment is AFFIRMED.