MARTHA COOK et al. *v.* T. F. LINDSEY.

1. HUSBAND AND WIFE: STATUTE OF LIMITATIONS: CHOSE IN ACTION ACCRUING TO WIFE DURING COVERTURE, BARRED BY STATUTE OF LIMITATIONS.—Where a chose in action accrues to the wife during coverture, it vests in the husband, who may sue for and recover it in his own name; and hence, in such a case, the Statute of Limitations will run, notwithstanding the coverture of the wife. See *Wade* v. *Grimes*, 7 How. 432.

2. STATUTE OF LIMITATIONS: PRINCIPAL AND AGENT: FRAUD.—Where the complainant comes into a court of equity to enforce a legal demand, the defence of the Statute of Limitations will not be disallowed on account of the fraud of the defendant, unless it be of such a character as to keep the complainant in utter ignorance of his rights, by placing beyond his control the ordinary means of discovering them ; and hence, when the agent falsely and fraudulently denied the reception of money for the principal from a source well known to the latter, the fraud is not sufficient to take the case out of the operation of the statute.

IN error from the Chancery Court of Choctaw county. Hon. William L. Harris, chancellor.

*D. Mayes,* for plaintiffs in error.

The case is one of equity cognizance, and no Statute of Limitations bars such equitable demands.

Courts of equity, in the adoption of the rules of statutes, do so with just and equitable modifications.

Here we have a great number of married women and infants making an attorney in fact, to receive their respective parts of an estate, the business being to be transacted in a neighborhood in which they are strangers, at a distance of six hundred miles, in another State. He being a near relative and co-distributee, has their entire confidence, and to him and him only they look for a faithful report and true information. He reduces to possession their respective portions, and falsely and fraudulently reports to his principals that they had been excluded from distribution, and he had received nothing for them. They diligently inquire of him, and he invariably makes the same reply ; and they, in full confidence of his veracity, believe, until within eighteen months of the time of

suing, that his representations are true. He now contends that he, the unfaithful attorney in fact, having for nearly twenty years, by his false and fraudulent representations, deluded his confiding relations and co-distributees, is a proper subject for the protection of a court of equity, in the face of these admitted facts. Neither principle nor precedent embraces or sanctions such a case.

I have said the case was of equity cognizance. I might have said it was exclusively so. The fund was one in which defendant and complainants had a common interest. One tenant in common of a fund can maintain no action at law against his co-tenant.

*J. Z. George,* on same side.

1. Appellee was agent for the complainants, and it was his duty to account to them for his receipts as agent. This duty was active, not passive. See Story on Agency, §§ 203 and 204.

2. The relation of agency existed, and was a direct trust, against which the Statute of Limitations does not run. *Liverman* v. *Johnson,* 28 Miss. R. 284; Angell on Lim. 185.

3. Wherever a relation exists, by which it is rendered the duty of the trustee to disclose to the beneficiary the true state of the transaction, the statute does not apply. *Buckner & Stanton* v. *Calcote,* 6 Cushm. 597.

4. But here, in addition to the duty imposed on Lindsey by virtue of the relationship to disclose the truth, he was guilty of a positive act of fraudulent representation, and this will take the case out of the Statute of Limitations. Ib.

*Yerger* and *Anderson,* on same side.

1. Equity has jurisdiction of this case. 1st. Because fraud is charged in the bill. 2d. Because the defendant, by fraudulently converting the proceeds of the property to his own use, became a trustee for the other distributees for their respective portions. 2 Story Eq. § 1265; 1 John. Ch. R. 394; 4 Ib. 118; 6 Paige, 355; 1 Clarke R. 84; 6 Cranch, 148; 7 Watts, 387; 11 Leigh, 213; 16 Conn. R. 389. And 3d. Because there is no adequate remedy at law. Fraud committed under circumstances which keep a knowledge of the fact concealed, and thus delay the assertion of a right beyond the period prescribed by the statute, cannot at law be re-

plied as a bar to the plea of the statute ; but, being against conscience, equity will supply a substitute for the original right. Angell on Lim. 28, 29 ; *Trout* v. *Smith*, 20 Johns. R. 33 ; *Leonard* v. *Pitney*, 5 Wend. 30 ; *Allen* v. *Mills*, 17 Ib. 202 ; *Callis* v. *Waddy*, 2 Munf. 511 ; *Rice* v. *White*, 4 Leigh, 474 ; *Miles* v. *Barry*, 1 Hill (S. C.), 296 ; *Exrs. of Hamilton* v. *Smith*, 2 Murphy, 115.

2. The Statute of Limitations does not apply.  The defendant was the agent and trustee of complainants, and they had a right to rely upon his assertions.  *Buckner & Stanton* v. *Calcote*, 28 Miss. 597 ; *Livermore* v. *Johnson*, 27 Ib. 289 ; *Howard* v. *Lord Annesly*, 2 Sch. & Lef. 364 ; Story Eq. 738 ; Lewin on Trustees, 617 ; *Costar* v. *Murry*, 5 John. Ch. R. 532 ; Angell on Lim. 188 ; 3 Leigh R. 732 ; 3 J. J. Marsh. 15 ; 3 Monroe, 411 ; 4 Dana, 226 ; 1 Blackf. 77 ; 9 Missouri, 402 ; 12 Penna. St. 49 ; 8 Watts, 12 ; 4 Yeates, 109 ; 1 McCord, 314 ; 4 Dessaus. 480 ; 2 Sumner, 491, 551, 563 ; 3 Story R. 741 ; 5 Mason, 143.

3. The lapse of twenty years is not *per se* a bar.  No length of time is a bar in equity to fraud.  *Marks* v. *Pells*, 1 John. Ch. R. 594 ; *Bowen* v. *Evans*, 2 House of Lords Cases, 257 ; *McClung* v. *Ross*, 5 Wheat. 116 ; 2 Barber R. 488 ; 3 Watts, 165.

4. The Statute of Limitations does not apply, because no administration had been granted.  *Wood & Wife* v. *Ford*, 29 Miss. 57.

*W. Brooke*, for defendant in error.

The descendants of one Mary Lindsey are seeking by this bill to recover from defendant, T. F. Lindsey, a sum of money collected by him in 1835 from the estate of her brother, Starling Tucker, he, said T. F. Lindsey, being her agent.

The bill cannot be sustained.  1. Because it could only be brought by her administrator.  Her heirs-at-law cannot sue in that capacity for personalty.  If there has been no administration on her estate, one could be had for the purpose of suing.

2. The claim is evidently barred by the Statute of Limitations.  It will not do to say that it was a trust.  It was simply a case of money collected, had, and received for another, and not such a technical trust as is protected from the bar of the statute.

3. Lindsey may have been guilty of fraud, in concealing the fact that he had received the money ; but the parties had ample oppor-

tunity of ascertaining the truth.   Evidently they have been guilty of great laches.   Many of them, as shown by the bill, were under no disability.

4. There is a clear and unembarrassed remedy at law.   The demand is a mere moneyed one.

5. The bill is so confused as to the genealogy of the complainants, and as to dates, as to render it senseless and incomprehensible.

FISHER, J., delivered the opinion of the court.

This was a bill filed by the complainants in the Chancery Court of Choctaw county, to recover a sum of money alleged to be due to them from the defendant.   The court below sustained a demurrer to the bill, on the ground that the claim appeared, by the allegations of the complainants, to be barred by the Statute of Limitations.

The complainants assert a claim to the money as the children and grandchildren of one Mary Lindsey, who died about the year 1836.

It is alleged that Mary Lindsey was the sister of one Tucker, who died about the year 1835, in the State of South Carolina, leaving a large estate, which, under the laws of that State, descended to his brothers and sister above named.   That no administration was ever granted upon his estate, but that it was settled by his half brothers, who paid to the defendant, Toliver F. Lindsey, about the year 1836, the portion of the said Mary, who was then dead.   That Toliver F. Lindsey received said money, under a regular power of attorney executed by the parties entitled as distributees of the said Mary's estate.   That soon thereafter he removed to the State of Mississippi, and being called on to account for the money received from Tucker's estate, he denied having received the same, and at the same time asserted that nothing was coming to the complainants from said estate, which denial and assertion are alleged to be false and fraudulent.   That the said Lindsey has repeatedly since, denied the collection of said money, and that all parties reposing great confidence in him, never discovered the falsehood of said denial and assertion until about eighteen months before the commencement of this suit.   The bill further alleges that several of the parties (whose names are set out in pleading), at the time of the execution of the power of attorney to the defendant, and at the time of the receipt of the money by him, were *femes*

*covert*, and so continued till their death; and that their children, who claim in right of their respective mothers, were then infants, and so continued until a short time before filing this bill. The object of this allegation is to take the case out of the operation of the Statute of Limitations; and under the view which we have taken of the case, the facts on this subject are not required to be stated with particularity.

It is said, that this being a trust, the statute never commenced running, and cannot, therefore, be relied on as a defence. The claim, like most contracts between principal and agent, is a pure legal demand, which might have been asserted in a court of law. The trust does not belong to that class against which the statute will not run, but was implied, or resulted from the power to collect the money. The obligation to account arose from the power to collect, and this obligation became complete as soon as the collection was made. This question being disposed of, we will notice the next in order; that is, whether any of the parties, at the time the right accrued, labored under the disability of coverture.

This question is settled by authority. The right accrued during coverture, and consequently vested immediately in the husbands, who could have sued for and recovered the same without joining their wives. It would have been otherwise if the right had accrued before marriage. In that case, nothing but actual reduction to possession by the husbands, or something equivalent thereto, during coverture, would have defeated the right of survivorship to the wives. *Wade* v. *Grimes*, 7 How. 432.

This brings us to the main question relied on by the complainants' counsel, and that is, whether the defendant shall be permitted to avail himself of the defence of the Statute of Limitations, without accompanying such defence with an answer denying the fraud. The object of this statute is to protect parties against stale demands, which, in many cases, might be more easily established after a great lapse of time, than if they had been immediately prosecuted; and while in some cases fraud is, in the view of a court of equity, a sufficient answer to a plea of the Statute of Limitations, yet such answer can never avail a party who, by reasonable diligence, could have ascertained his rights within the time prescribed. The law must be construed with reference to the policy which it

Cook et al. *v.* Lindsey.

establishes; and when it admonishes a party to be active in asserting his rights, it must be construed also, to admonish him to be equally active in ascertaining their existence. A different rule would announce but a legal absurdity. It would command diligence to be exercised as to the remedy, but permit negligence to excuse a party for not discovering in proper time, the right, to enforce which, the remedy would be invoked. Fraud is not an exception which the legislature has thought proper to engraft upon the statute, but an exception which courts of equity have established in certain cases, and like all exceptions which do not fall either within the letter or equity of a statute, ought never to be tolerated merely to relieve against the hardship of a particular case. The policy of the law belongs to the country, to society at large; the case is confined to the parties, and what affects the whole country must not be measured by the rights of litigants in a single case. Where the demand is purely of an equitable nature, and the defendant insists on lapse of time, by analogy to the statute as applicable to legal demands, the court, not being absolutely bound by such a defence, may take into consideration such equitable circumstances as ought to bind the conscience of the party, and may accordingly reject the defence. But in case of a legal demand, nothing but such fraud as was calculated to keep the parties in utter ignorance of their rights, and to place beyond their control the ordinary means of discovery on the subject, ought ever to be held as a sufficient answer to the defence thus made. Here the parties knew their rights, and knew the persons from whom correct information on the subject could have been obtained, and failing to take any step for this purpose, they ought not now, after slumbering upon their rights for nearly twenty years, more than thrice the period prescribed by the statute, to be allowed to urge what was, no doubt, a sufficient act of fraud on the part of the defendant to arouse them to proper diligence, as an answer to the defence under the statute. But they say they trusted to his statement. They had no right to trust, when all the circumstances showed it to be false.

Decree affirmed.